## George B. Winter v. Charles S. Atkinson.

1. ASSAULT AND BATTERY—*In Defense of One's Property.*—Where a person without right is in the act of carrying away the property of another from the owner's premises, the law does not require the owner to stand idly by and permit the same to be done; he may demand his property, and in case the demand is refused, retake the same, provided he uses only such force as is reasonably necessary in so doing.

**Trespass**, for assault and battery. Appeal from the Circuit Court of Cook County. Heard in the Branch Appellate Court at the October term, 1899. Reversed and remanded. Opinion filed November 20, 1900.

ELA, GROVER & GRAVES and BENJAMIN F. MARCH, attorneys for appellant.

A. N. TAGERT, attorney for appellee.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

This was a suit by appellee against appellant in trespass, for assault, and to reverse the judgment recovered, this appeal is prosecuted.

The appellant kept a meat market, and appellee worked for him as a meat cutter and salesman, for a little more than six months. For convenience in making deliveries a list containing the names and addresses of patrons for whom goods were to be delivered, was kept on a paper conveniently posted. This list became soiled and appellee made a new one in a small book that he already had, or that was procured by him for the purpose, and the old list was destroyed. From that time the book contained the only list of appellant's customers for whom deliveries were to be made, and their addresses, that was in existence. The appellee usually carried the book in his vest pocket, but it was used daily or whenever needed, not only by appellee but by all other of the employes. The list as originally copied into the book, with names added from time to time, gave

the names and addresses of about one hundred and seventy-five of appellant's customers, alphabetically arranged on twenty-five of its leaves.   On the nine remaining leaves of the book there were a few memoranda personal to appellee, but such memoranda had ceased to have any material value or use to any one.   Under such circumstances as the evidence discloses concerning the book and the list it contained, we have no hesitation in holding that the list contained in the book belonged to and was the property of the appellant.

After the book had been in use in the business about two months, appellee made arrangements to leave appellant's employ.   There is evidence that tends to show he contemplated entering into a competitive business, and to use the list of customers the book contained in that business.   But there is no evidence of any ill-feeling between the parties at the time it was agreed that appellee should leave.   As to what occurred right after appellant had installed another man in appellee's place, we quote from appellee's testimony as follows:

"I then started to put on my overcoat and started to leave the store.   When I walked down the store Mr. Winter was walking by my side.   When about half way down the store Mr. Winter asked for the book.   I said to him, 'What book?'  He said, 'The book you have.'  I said, 'What book is that?'  He said, 'The book with the names and addresses of my customers in it.'  I said, 'I can't give you that, there are other items in the book which are of no interest to you and are valuable to me.'

Q.   What did he say in reply to that?   A.   He said, 'I don't care about that, I want the book.'  I says, 'What do you want?'  He says, 'I want the names and addresses of my customers.'  I said, 'If you want them I will copy them off and send them to you or bring them to you.'  He said, 'No, tear them out.'  I says, 'I can't do that because if I do that I will spoil the book; the book will fall to pieces.'  At that time I believe that he went to the office to make change for somebody.   I continued on walking down the store with my hands in my pockets.   He came up to me just as I was going out about five feet from the door.   He stood in front of me and he struck me a violent

blow. He said, 'You can't get out of here with that book.' The blow was delivered at the time he made the last remark."

There was other testimony tending to show that appellee made the first physical act of assault, but we may for present purposes accept appellee's testimony as the truth in that respect.

A struggle ensued between the men, in the course of which the book was taken from appellee's pocket by the appellant but not retained by him. The struggle ceased as soon as it was known that appellee's leg had been broken, and appellant went right away for a surgeon. Appellee was considerably the larger man of the two, and we see no evidence from which it can be certainly inferred that greater force than was reasonably necessary was used by appellant, or that appellee's broken leg was the result of anything but mischance and accident.

The important question is as to the right of an owner of personal property to retake the same by the use of such reasonable force as may be necessary, from another who is without right carrying it away with the intention of depriving the owner of it.

" If a chattel has been seized and carried away by a person who has no color of title to it, and the owner comes. and demands it and the trespasser refuses to give it up, the owner may use force sufficient to enable him to retake his property." 1 Addison on Torts (Wood's Ed.), 545.

" A person is justified, according to what seems the better doctrine, in using reasonable force in regaining his momentarily interrupted possession of personal property where such property was taken from him by force or fraud." Am. & Eng. Ency. of Law, 983.

Under the conceded facts of the case, the list the book contained was clearly the property of the appellant. It was made in the course of his business for use in his business. True, it had generally been kept in the custody of appellee, and properly so. It was used by him in his capacity as meat-cutter and salesman for appellant, and up to the moment of his denial of it to the appellant his pos-

session of it was appellant's possession. The moment he denied appellant's right to it that moment he became a wrongdoer and guilty of conversion, and from that moment force, reasonably exercised, was properly applied by appellant to compel its surrender.

But it is claimed that the book belonged to appellee and contained memoranda personal to himself, and that appellee was not obliged to surrender the book, nor to mutilate it by tearing out the list. The claim is more specious than real. Twenty-five of the thirty-four leaves of the book were made up of the list, and some inconsequential memoranda of appellee were on some of the remaining nine leaves. But even though it be that appellee owned the book itself, which we do not admit, the appellee could not make the list of customers his own by copying them into a book of his own and then refusing the list to appellant. The doctrine of intermixture and confusion of goods would prevent it. Beach v. Schmultz, 20 Ill. 185.

We do not see the applicability to this case of decisions relating to the forcible taking possession of real estate wrongfully withheld. In the nature of things realty can not be concealed, and the statute of forcible entry and detainer supplies means for recovering its early possession.

The question of whether appellant used unreasonable force in what he did was proper for the jury to consider, but it should have been in connection with proper instructions.

The following instructions, out of numerous others, were requested by the appellant and refused by the court:

"19. The court instructs the jury that if they believe from a preponderance of all the evidence that at the time of the alleged assault the plaintiff had in his possession and was in the act of carrying away from the defendant's premises a certain list of defendant's customers with the intention on the part of the plaintiff of keeping the same and converting the same to his own use, and if you further believe from a preponderance of all the evidence and under the instructions of the court that such a list was then the property of the defendant, you are instructed as a matter of law that the defendant had the lawful right to

take such list of customers from the plaintiff's possession, using such force in so doing as was reasonably necessary to prevent the plaintiff from taking such list of customers away from defendant's premises.

And if you further believe from a preponderance of all the evidence that in preventing the plaintiff from so carrying away such list of customers (without malice and without willful intent to injure the plaintiff, and using only such force as a reasonably prudent man would under like circumstances deem sufficient to prevent such carrying away,) the defendant unintentionally injured the plaintiff, you are instructed as a matter of law that the plaintiff can not recover and that your verdict should be for the defendant."

"17. The court instructs the jury, as a matter of law, that when a person is without right in the act of carrying away the property of another from the owner's premises, with the intention of converting the same to his own use, he is a wrongdoer, and the law does not require the owner to stand idly by and allow such wrongful carrying away, and that in such case the owner has the lawful right to demand his property, and in case such demand is refused, by force to prevent such carrying away and to retake his property, provided he uses only such force as is reasonably necessary to prevent such carrying away or conversion of the property in question."

These instructions conform to the law as we understand it, and were applicable to the evidence, and there was not in any of the given instructions on either side any other that took their place.

For the error in refusing them the judgment of the court below will be reversed and the cause remanded.